Statement of the Case.
NICHOLLS, O. J.
This suit was instituted by the plaintiff on the 3d of June, 1899. It was brought by the plaintiff as the guardian of the three minor children, issue of her marriage with Seaborn Alonzo Goodwin, and on her own account individually, as the widow of said Goodwin, against the Bodcaw Lumber Company, which was alleged to be a corporation organized under the laws of Arkansas, but with a domicile fixed by it for the state of Louisiana, with L. K. Watkins as its agent for the purposes of citation.
The demand is for judgment against the defendant in favor of the widow for the sum of $5,500, and in favor of the guardian in behalf of the minors for the sum of $6,000.
The action is based upon allegations that during the month of June, 1898, the said Sea-born A. Goodwin was an employs of the Pine Woods Lumber Company, which was operating a large sawmill in Webster parish, and as employé of said company had a right to go and be upon the premises of said company and its millyard. That the Bod-caw Lumber Company was operating railroad tracks alongside and through the premises of the Pine Woods Lumber Company and its millyards, and running and operating its locomotives over said tracks.
That on the 17th of June, 1898, the said Goodwin, while an employe of the Pine Woods Lumber Company, started from his home near the mill to do his work in the yards of the mill company, and walked to the commissary, and from thence down the path along the track of said railroad towards the slab shoot or elevator, where his work was, he being at the time engaged in moving the slabs to the dryhouse; and just as he reached the point where it was necessary for him to be on the track, and within a few feet of the slab pile, a locomotive operated by the agent and employés of the Bodcaw Lumber Company came rapidly down the track, pushing a number of box cars in front of it, and, coming up behind said Goodwin without his knowledge, and without giving any warning of its approach, struck him on the back and shoulders, knocked him down, and, after dragging him about the distance of three car lengths along the track, ran over him, and mangled and bruised, cut, and injured him so that, after much pain, agony, and suffering, he died. That his death was due solely to the fault, negligence, recklessness, and wantonness of the defendant company, its agents and employés. That he was in plain view, and need not have been injured if proper care and caution had been observed by the defendant. That it was running its locomotive through the premises of the mill company, where they well knew the employés of the mill company were passing and repassing over its tracks, as they had a right to do, without any brakeman on the front end of the cars (box cars being in front of the engine) to keep a proper lookout in front and to notify the engineer. That they were running this train along said tracks during the middle of the day at a rapid rate, when the hands of the mill company were working upon and passing about the yard, and without blowing the whistle or ringing the bell. That no warning was given, no bell rung, nor whistle sounded to notify the deceased of the approach of the train, and of his danger, as it was the duty of the operators to do. That the fireman, flagman, and brakeman were not at their proper-posts to keep the proper iookout and give the proper warning and signals. That no precautions whatever against damage were used, but the management of the train was negligent, wanton, and reckless to such an extent as to be equivalent to intentional mischief. That, if ordinary care and prudence had been observed by the operators of the train, the accident would not have happened.
Plaintiff set out that after the death of her husband, and before she had learned the true facts, the defendant paid her $500, and, tak *1053 ing advantage of her distressed mental and financial condition, and by misrepresentation and false statement of facts, induced her to sign_ a receipt acknowledging full payment of her claim for all damages caused by the defendant in killing her husband, which receipt was signed by her in error both of law and fact, and while she was in great mental distress; and that said sum should be allowed as a credit on her claim for $6,000, leaving a balance of $5,500.
The defendant answered, pleading the general issue.
The case was tried before a jury, which on the 22d day of September, 1900, returned a verdict for the plaintiff for the sum of $2,500. A new trial was granted on the 28th of September on the application of the defendant.
On the 3d of October, 1900, the plaintiff filed an amended petition, in which she alleged: That just previous to the arising of the cause of action set forth in her original petition the parties constituting the Bodcaw Lumber Company attempted to organize another corporation, styled the “Louisiana & Arkansas Railroad,” with William Buchanan president, and having the same domicile and the same agent for the state of Louisiana; the said corporation being organized for the purpose of receiving and exercising the railroad franchises of the Bodcaw Lumber Company. But no record of the transfer of said franchise or of the property of the Bodcaw Lumber Company to the Louisiana & Arkansas Railroad had ever been made in Webster parish or in the state of Louisiana, nor had said Louisiana & Arkansas Railroad any domicile in the state of Louisiana, or any known place of business in the state; hence plaintiff did not believe said concern was an active, going corporation, with the rights and privileges of operating in Louisiana. However, if the court should hold to the contrary, she had the same cause of action against it that she has set out in her original petition against the Bodcaw Lumber Company. The same parties being already before the court, she desired to have them cited under the name of the Louisiana & Arkansas Railroad, and to have them made parties defendant under that name; hence, adopting all the allegations and prayers of the original petition, she prayed further that the said Louisiana & Arkansas Railroad Company be made party defendant herein; that they also be served with a copy of the original petition and of this amendment, and be cited to answer according to law; and she prays in the alternative that, if the court should find that the said Louisiana & Arkansas Railroad was an active, going corporation, with right and privilege to operate in the state of Louisiana, and had actually acquired the property and franchises of the said Bodcaw Lumber Company, she then, in that event, prayed for judgment against the said Louisiana & Arkansas Railroad on the same terms as she had in her original petition proper against the Bodcaw Lumber Company. She prayed for all other orders and decrees necessary, and for general relief.
A citation directed “to the Louisiana & Arkansas Railroad of Webster Parish” was placed in the hands of the sheriff of that parish, and was returned by him as having been received on the 17th of November, 1900, and executed on the same day by handing to L. K. Watkins in person. A second citation, similarly directed, was returned by the sheriff as having been served on February 8, 1901, by handing same to F. H. Drake in person.
The Bodcaw Lumber Company excepted to the amended petition on the ground that it came too late, and changed the issues, and made new parties, and, if not rejected on those grounds, that the records and evidence adduced on the trial showed that the Louisiana & Arkansas Railroad was an active, going corporation at the time Goodwin was killed, and that its agents and employés were in charge of the train that ran over him; and the amendment filed in making that company a party was an abandonment of the claim against it (the Bodcaw Lumber Company), and an effort to substitute new parties, and, if not, then it was a clear misjoinder of parties under the status of the case. It prayed that the plaintiff be ordered to dismiss the suit as to the Bodcaw Lumber Company, and, if not, to elect against which company it would demand judgment, as the demands against both were inconsistent.
These exceptions were overruled, and the Bodcaw Lumber Company filed an amended answer to the petition, pleading a general denial.
On the 21st of February 1901, the Lou *1055 isiana & Arkansas Railroad pleaded by way of exception tbe prescription of one and two years, which the court referred to the merits.
On February 22, 1901, the Louisiana & Arkansas Railroad answered under reservation.
After pleading the general denial, it averred that Goodwin was not killed by its fault, or that of its agents or employes, but by his own want of care and prudence in placing himself on the railroad track before a moving train of cars; and that he was grossly in fault; that, if any fault at all was to be attributed, plaintiff was guilty of contributory negligence; by his carelessness and want of prudence his widow and children were prevented from claiming damages; that there were other walks and ways and regular places from these for parties to walk and travel on.
It further pleaded that the receipt and contract alleged by plaintiff was freely and voluntarily given for the purpose expressed, and estopped plaintiff from prosecuting the suit.
On June 4, 1901, the plaintiff, suggesting that the pleas filed by the Louisiana & Arkansas Railroad were inconsistent, and could not all be true, and it should not be allowed to urge them all before the court, prayed that it be ordered to elect which one they would attempt to prove, and on which it would rest that defense and confine their evidence to that one.
On the next day the railroad company answered the rule, and, alleging that it had set up no plea of payment in the case, it amended its answer by striking therefrom all allegations in regard to the receipt. It declared it rested its defense on the plea of prescription filed by way of exception in the case, and answer of general denial, and alternative plea of contributory negligence.
On December 4, 1901, a second jury trial was had, ending on the 7th, when the jury returned a verdict in favor of the plaintiff for the sum of $6,500 (less $500) against the Bod-caw Lumber Company.
The court rendered a judgment against the Bodcaw Lumber Company according to the verdict, and rendered judgment in favor of the Louisiana & Arkansas Railroad rejecting plaintiff’s demand against it.
The Bodcaw Lumber Company appealed from the judgment against it, and the plain- • tiff appealed from the judgment in favor of the Louisiana & Arkansas Railroad. The plaintiff, in answer to the appeal of the Bod-caw Lumber Company, prayed that the judgment be increased against the appellant to the full amount claimed.
Opinion.
The plaintiff alleges in her petition that the Bodcaw Lumber Company was a corporation organized under the laws of Arkansas. The original charter of the company is not in the record, but certain amendments to the same do appear. One of them is evidenced by proceedings of a meeting of stockholders held on the 8th of December, 1894, in which it is declared that all of the stockholders were present, their names being given. The proceedings show that at that meeting it was unanimously resolved that article 3 of the charter of the Bodcaw Lumber Company be so amended as to read as follows:
“Third. The purposes and objects for which this corporation is formed, are to purchase timber and manufacture and sell lumber and in connection therewith to buy, sell and own real estate either in the states of Arkansas or Louisiana, to buy, sell and own merchandise and carry on the business of merchants, in either of said states. To build, maintain, operate and lease railroads for the transportation of timber, lumber or other property of this corporation in either of said states and to buy, hold and dispose of and operate saw, shingle and planing mills and-any other machinery or implements in connection therewith, and to operate and run the same in either of the said states together with the prosecution of any and all matters connected therewith, or in anywise incidental to the effective and proper conducting of the manufacture and sale of lumber in either of the said states, including the establishing and maintaining an office and agent in the state of Louisiana in order to comply with the law of the state of Louisiana in relation to ‘Foreign corporations’ in engaging in business in said state.”
By the certificate of the president and directors of the Bodcaw Lumber Company attached to these proceedings they certified that the object of this amendment to the charter enlarging the powers of the company “was to authorize and empower it to buy, own, and sell lumber, timber, merchandise *1057 and real estate in the state of Louisiana in addition to its former powers.”
At this meeting the stockholders selected Minden, in the parish of Webster, as the domicile of the corporation, and authorized the directors to appoint an agent there upon whom the legal service might be served.
The directors on the same day appointed L. K. Watkins, of Minden, as such agent.
On the 18th of March, 1898, a corporation known as the “Louisiana & Arkansas Railroad” was organized in Arkansas. The incorporators of this corporation were stockholders in the Bodcaw Lumber Company, but some of the stockholders of the latter company were not included among them. The object of the incorporation was declared to be for the purpose of constructing, acquiring by purchase, or otherwise owning and operating and maintaining a railroad for public use in the conveyance of persons and property from a point on the St. Louis Southwestern Railroad at or near Stamps, in Lafayette county, Ark., in a southerly direction, to a point on the south boundary line of the state of Louisiana, about two miles east of the southeast corner of the county of Lafayette, in said state, with the right to construct or buy, own and operate, a railroad from said last-named point in a southerly direction through the state of Louisiana to a point near Cotton Vailey, in Webster parish and state of Louisiana, a distance of about 15 miles in the state of Louisiana, to there unite and join with a railroad constructed or to be constructed from said Cotton Valley in a southerly direction to the town of Minden, in said parish of Webster, in said state of Louisiana, said route to pass through the counties of Lafayette and Columbia in the state of Arkansas, a total distance of 24 miles, or thereabouts, in the state of Arkansas, and with the right also to construct, buy, maintain, and operate temporary branch lines of railroads from points on said main line through the counties of Lafayette and Columbia for the purpose of transporting logs and timber to mills located on said main line. The name of said corporation shall be “Louisiana & Arkansas Railroad,” and its corporate existence shall be for a period of six years. The said corporation in carrying into effect the purposes aforesaid shall have and exercise all the rights, powers, privileges, and authority, and be subject to all the liabilities, conferred and imposed upon like corporations organized under the laws of the state of Arkansas.
It is intended, under and by virtue of the articles of incorporation in accordance with sections 6148, 6339, etc., of chapter 130, of Sandels & Hill’s Digest of the Laws of the State of Arkansas, to acquire by purchase an existing railroad (unincorporated at present as such) now in operation between Stamps, Ark., and said point on the south .boundary line of the state of Arkansas before described, and extending into the state of Louisiana in the direction of Cotton Valley.
The capital stock of the said corporation was declared to be $150,000, to be divided into 1,500 shares of $100 each, the said amount to be used in the purchase of the existing railroad mentioned, with the right of way, motive power, and other property and appurtenances of every kind and description, and which amount of stock to the amount of $150,000 had been in good faith subscribed by the persons whose names were subscribed to the act of incorporation.
A copy of the articles of incorporation of the Louisiana & Arkansas Railroad was recorded in the office of the Secretary of State of Louisiana on the 13th of April, 1898, and of the appointment of L. K. Watkins as agent on the 10th of June, 1898.
At a called meeting of the board of directors of the Bodcaw Lumber Company, held at Stamps, Ark., on the 18th of March, 1898, it was agreed to offer to sell to the parties organizing the railroad corporation to be known as the Louisiana & Arkansas Railroad, or to said corporation when formed, all the property carried on the books of the Bodcaw Lumber Company in the account known as the Louisiana & Arkansas Railroad, including rolling stock, rights of way, and all property of every nature and description pertaining to said railroad, with all rights of way for railroad owned by the Bodcaw Lumber Company, for the sum of $200,000 — $150,000 cash and $50,000 by note of the Louisiana & Arkansas Railroad, interest payable on or before two years — and the officers of the company were authorized to make and consummate the sale.
*1059 The property so offered for sale was sold and transferred by the Bodeaw Lumber Company to the Louisiana & Arkansas Railroad Company on the 1st of April, 1898.
There is no evidence of the sale having been registered either in Louisiana or in Arkansas prior to the killing of Goodwin.
The property sold by the Bodeaw. Lumber Company to the Louisiana & Arkansas Railroad Company was paid for and taken charge of by the officers and agents of the latter company, on the 1st of April, 1898, and the engine and car which ran over and killed Goodwin was at that time operated by, and under the control of, its officers and employes. These officers and employés had been made aware of the change of ownership and of employes resulting from this sale.
This property, together with other property, was returned for assessment .in Webster parish in the year 1898 in the name of the Bodeaw Lumber Company, by J. G. Ferguson, a stockholder in this last-named corporation. Being on the stand as a witness, he was asked, “You never rendered any assessment for the Louisiana & Arkansas Railroad, did you?” to which he replied: “I never made any assessment for but one year. That was in 1898. I do not know why I assessed it to the Bodeaw Lumber Company, unless it was because they did not buy — they had not sold — they owned it until March, 1S98-” In the year 1899 the land was returned for assessment by Ferguson in the name of the Bodeaw Lumber Company. The property of the Louisiana & -Arkansas Railroad Company was returned for assessment to the state of Louisiana, and the assessment was by the state board forwarded to the parish assessor of Webster parish for entry on the record. That officer, however, as he says, for his own convenience and that of the sheriff, ex officio tax collector, entered the whole, as it had been entered the year before, in the name of the Bodeaw Lumber Company. Ferguson, who was doing business for both companies, called his attention to this error, and asked for alteration and separation. This the assessor refused to do, as the entry of assessment was on his books. He, however, divided the taxes between the two corporations, giving each a separate receipt for the part due by it.
The plaintiff’s claim that under the state of facts shown through the testimony and by the record by the Bodeaw Lumber Company both companies are liable to damages.
Her contention (if we understand it correctly) is that the Bodeaw Lumber Company and the Louisiana & Arkansas Railroad Company are substantially one and the same. The two companies have the same president, and the same officers, and the stockholders of the Louisiana & Arkansas Railroad Company are all stockholders in the Bodeaw Lumber Company. That it was the same corporation, only under another name. That, if she committed any error in bringing the suit, it was not the bringing the wrong corporation into court, but in citing it under a wrong name, and that it was a matter susceptible of correction by an amended petition and service under the proper title name. But that, even if they were separate and distinct, the Bodeaw Lumber Company having been once the owner of the railroad property, and having had the control and management of the trains thereon, it remained quoad the public as the owner of the same, and responsible legally for the management and act of the employés, for the reason that no registry of the transfer of the property had been made in Louisiana (particularly in Webster parish) at the time of the killing of Goodwin, and under the law the transfer was null and void as to every one other than the parties themselves, and for the additional reason that the property stood assessed in its name at that time and at the time of the institution of the action.
Plaintiff further urges that, if there was such a corporation as the Louisiana & Arkansas Railroad Company, it had not complied with the laws of Louisiana authorizing it to do business in Louisiana; that it had no domicile in the state, and no known place of business; and, if it had property in Louisiana, it all stood recorded and assessed in the name of the Bodeaw Lumber Company.
The Bodeaw Lumber Company maintains that it had parted with its ownership of the locomotive and car which ran over and killed Goodwin, and that the same was not in the possession or control of its officers and employSs when the accident happened; that, on the contrary, they were in the possession of and under the control and management of *1061 the Louisiana & Arkansas Railroad Company and employes, with whom it had connection neither in fact nor in law.
It maintains that a corporation legally organized is held in law to be a person distinct from the members or stockholders who compose it, and it follows that, even though the same individuals may be the incorporators of or own stock in two separate corporations, and such corporations may have the same individuals as officers, this fact will not make one of such corporations liable for the acts or faults of the other. In support of this position its counsel refer the court to Cook on Corporations (4th Ed.) § 1, and notes thereon, and to St. L. S. W. Ry. Co. v. Gate City Co-Op. Gro. Co. (Ark.) 65 S. W. 706; also that corporations chartered according to the laws of another state are recognized in Louisiana, and do not have to register and publish charters as provided for for corporations organized in Louisiana; that Act No. 149 of 1890 carried into effect article 236 of the Constitution of 1879, and was the law in full force in 1898 in reference to foreign corporations doing business in Louisiana; that, article 264 of the Constitution of 1898 being the same as article 236 of the Constitution of 1879, it needed no new law to carry the same into effect; that the stockholders of the Louisiana & Arkansas Railroad Company did not include all the stockholders of the Bod-caw Lumber Company.
Article 2315 et seq. of the Civil Code declares that every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it; that every person is responsible for the damage he occasions, not merely by his act, but by his negligence, his imprudence, or his want of skill; that we are responsible not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody; that masters and employers are responsible for the damage occasioned by their servants and overseers in the exercise of the functions in which they are employed. The “fault” 'which the plaintiff declares upon as giving her a cause of action is not a fault committed by the Bodcaw Lumber Company in not causing the title of the property which it had sold and transferred to the Louisiana & Arkansas Railroad to be changed upon the records of Webster parish, or in permitting that property to continue to be assessed in its own name, but the fault arising from the alleged negligence of the parties in possession of and operating the train which ’ran over and killed Goodwin, who are declared to have been the officers and employes of the Bodcaw Lumber Company, or, as they contend in argument, the Bodcaw Lumber Company,, acting under the name of .he Louisiana & Arkansas Railroad Company.
The evidence establishes the fact that the parties in possession of and operating the locomotive and car which ran over and killed Goodwin were officers and employes of the Louisiana & Arkansas Railroad Company. If the act complained of was a fault which gave rise to damages, that corporation was the party responsible for the same. If the Bodcaw Lumber Company had parted with the ownership and possession of the property, and the parties operating the train were not its own officers and employés, it could not be held liable in damages, unless, by reason of some exceptional state of facts, it had become responsible for the acts of the Louisiana & Arkansas Railroad Company.
The act producing the injury must have been the fault of the party against whom damages are claimed, or that of parties for whom it is answerable for property under their control and custody as such.
Plaintiff claims that the Louisiana & Arkansas Railroad Company is nothing other than the Bodcaw Lumber Company reorganized under another name.
There have been instances where an existing corporation has reorganized under another name, and where the rights and claims against the original corporation at the time of such reorganization have continued to exist unimpaired against the corporation under the new name and its property; but we are of the opinion that such is not the condition of things existing in the present instance. The Bodcaw Lumber ’ Company was unquestionably a legal corporation of Arkansas, and is so alleged to be in plaintiff’s petition. The corporation had property both in Louisiana and in Arkansas. The corporation was separate and distinct from its stockholders. The fact that certain individuals were stockholders in that corporation was no legal irupedi *1063 ment to their organizing and being stockholders of a separate and distinct corporation. The Bodcaw Lumber Company had the legal right to sell to a part of its stockholders as individuals, or to a corporation which their stockholders had organized, a part of its property, whether in Louisiana or Arkansas.
Plaintiff had no legal right to complain of that action, for she had no existing claims (still less rights) at that time against the first corporation. If there was any defect under the laws of Arkansas as to the manner of the organization of the Louisiana & Arkansas Railroad Company, it would by no moans follow that the Bodcaw Lumber Company would continue to own property which it had sold to that supposed corporation, and for which it had been paid. The ownership would, at all events, pass out of the Bodcaw Lumber Company to the promoters of the Louisiana & Arkansas Railroad Company, or to the individual members of this last-named company. (In this case these promoters and individual members were identical.) The Bodcaw Lumber Company could neither in law nor in equity retain both the price and the property, and it has never claimed the right to do so. While the Bodcaw Lumber Company was a corporation, it was not a public railroad corporation; that is to say, a corporation organized with the rights and obligations of a corporation created for and to be operated for the public use. Some of its stockholders evidently desired that it should become such, hut some did not. The corporation therefore sold a portion of its property to these particular stockholders to enable them to carry out their wishes.
The Bodcaw Lumber Company, influenced by this motive, had the.right to sell out, but it had no legal right, and was under no legal obligations, after selling, to control the purchaser in the disposition of the property. There was no condition attached to the purchase that the property should be made use of in that way. The intentions of the purchaser could (without the possibility of objections from the vendor) be altered at any time. Civ. Code, art. 1814.
The vendor, after the sale, had no connection with the property sold nor with the purchasers and was in no way concerned therewith as to what they might hereafter do.
But the plaintiff says that the sale of this property was registered neither in Louisiana nor Arkansas, and as to all but the parties themselves the sale was null; that, if null, the ownership of the property and the possession and control of the same must be held to have continued in the Bodcaw Lumber Company. The issue involved in this case is hot one of “property.” The plaintiff neither at the time of the organization of the Louisiana & Arkansas Railroad Company nor at the date of the sale made to it by the Bodcaw Lumber Company had any claims or rights against this last-named corporation or its property. It had none against its property at the time of this occurrence which gave rise to the litigation, nor when this suit was instituted, nor has she now. The action is not a real, but a personal, action arising from an alleged personal tort, in which the question of ownership and possession and control arise only incidentally for the purpose of ascertaining who was responsible legally for the fault and its consequences, if one was committed. The question of the ownership of the property would arise should plaintiff, having obtained a judgment against the Bodcaw Lumber Company, seize this property as that of its judgment debtor in opposition to the claims of the Louisiana & Arkansas Railroad Company, but not in determining by whose act it was actually that Goodwin was killed.
The fact that the sale from the Bodcaw Lumber Company to the Louisiana & Arkansas Railroad Company was not registered, or that the property continued to be assessed in Louisiana in the name of the former company, or that the latter company was not regularly organized in Arkansas, or was not authorized to do business in Louisiana, did not cause the locomotive and car which killed Goodwin to be at the time of the accident in the possession of and under the control and management of the officers and employés of the Bodcaw Lumber Company. They had no effect in producing that result, and did not alter the actual facts of the case.
The only effect of the nonregistry of the *1065 sale in Louisiana would be to occasion plaintiff some trouble and difficulty in ascertaining wbo the parties were wbo were at fault, and against whom she should bring her action for damages; but this was a difficulty following the killing, and had nothing to do with occasioning it. The two faults (if fault there was) were separate and distinct from each other, and the Bodcaw Lumber Company was not brought into court upon them as a cause of action. The Bodcaw Lumber Company owed no legal duty to the plaintiff to register the sale, and the situation and condition of the parties towards each other or the property was not such as to bring into action the legal effects of non-registry of sales.
We are of the opinion that tne judgment against the Bodcaw Lumber Company herein appealed from is erroneous, and should be reversed and set aside.
We now direct attention to the judgment in favor of the Louisiana & Arkansas Railroad Company, which the plaintiff has appealed from.
An examination of the pleadings of the amended petition will show that the theory of the plaintiff was that the Louisiana & Arkansas Railroad Company was nothing more than the Bodcaw Lumber Company under a new name. There are no allegations charging it as a distinct and separate corporation with negligence and recklessness; none that the train was in its possession, and under its control as such. All the allegations of the petition and amended petition are directed against the Bodcaw Lumber Company, and the object of the amended petition was to claim judgment against that company acting under the name of the Louisiana & Arkansas Railroad.
Plaintiff’s pleading's and prayers did not look to two judgments against two separate corporations. The claim advanced against it as a separate corporation is inconsistent with the position taken by it throughout. Neither the individual stockholders of the Bodcaw Lumber Company nor of the Louisiana & Arkansas Railroad Company are before the court. The view which we take of the legal situation makes it unnecessary for us to decide whether the plaintiff had the right to bring the Louisiana & Arkansas Railroad Company into an already • existing suit against another corporation by means of an amended petition, or whether the evidence taken in this case was legally admissible under the pleadings. We are met at the threshold by that company’s plea of prescription.
Conceding that the company was legally brought into court, the first demand made against it was through the service upon it on the-day of-of the original petition.
More than a year had elapsed at that time since the death of Goodwin.
The present action is based upon those provisions of article 2315 which give a right of action for damages to the minor children and widow of a deceased person where death has been caused by the fault of another. By that article the right of action is given “for the space of one year from the death.” The action is one ex delicto.
By article 3536 of the Civil Code actions resulting from offenses and quasi offenses are prescribed by one year.
By article 3541 of the Code this prescription runs against minors and interdicted persons, reserving to them, however, their recourse against their tutors or curators.
Article 3522 of the Code, which establishes as a rule that minors and interdicted persons cannot be prescribed, modifies the generality of the rule by adding, “except in the cases provided by law.”
In cases like the present the right of action itself is conditioned upon its being exercised within a year from the time of death. Ashbey v. Ashbey, 41 La. Ann. 142, 5 South. 546; Chivers v. Roger, 50 La. Ann. 57, 23 South. 100; Huberwald v. Orleans R. R., 50 La. Ann. 477, 23 South. 474; Cox v. Von Ahlefeldt, 105 La. 543, 30 South. 175.
We are of the opinion that the demand against the Louisiana & Arkansas Railroad Company was barred by the prescription of one year.
For the reasons assigned herein, it is ordered, adjudged, and decreed that the judgment of the district court in favor of the plaintiff against the Bodcaw Lumber Company, herein appealed from, be, and the same is hereby, annulled, avoided, and reversed, and it is now ordered, adjudged, and decreed that plaintiff’s demand against the company be, and the same is hereby, reject *1067 ed, and her suit dismissed, with costs in both courts. It is further ordered, adjudged, and decreed that the judgment in favor of the Louisiana & Arkansas Railroad and against the plaintiff herein appealed from be, and the same is hereby, affirmed, with costs in both courts.