David L. KENNEY et al., Appellants.

v.

TRINIDAD CORPORATION, Appellee.

No. 21063.

United States Court of Appeals
Fifth Circuit.

June 23, 1965.

Benjamin E. Smith, of Smith, Waltzer, Jones & Peebles, New Orleans, La., for appellants.

Alfred M. Farrell, Jr., and Terriberry, Rault, Carroll, Yancey & Farrell, New Orleans, La., for appellee.

Before RIVES and WISDOM, Circuit Judges, and MORGAN, District Judge.

WISDOM, Circuit Judge:

John Kenney, chief engineer on a tugboat, lost his life March 4, 1956, when a tanker negligently caused the tug to capsize and sink in the Mississippi River near New Orleans.[1] His body was never found. Seven years later, Kenney's two children, sued in admiralty for the wrongful death of their father. They rely on Article 2315 of the Louisiana Civil Code creating an action for wrongful death. Unfortunately for the children, Article 2315 limits the right of action to one year.[2] The libellants contend that under

---

1. Indian Towing Co. v. Lyons Creek, E.D. La.1960, 187 F.Supp. 774; *aff'd* Trinidad Corp. v. Indian Towing Co., 5 Cir. 1961, 293 F.2d 107.

2. "Art. 2315. Liability for acts causing damage; survival of action

 Art. 2315. Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it.

 The right to recover damages to property caused by an offense or quasi offense is a property right which, on the death of the obligee, is inherited by his legal, instituted, or irregular heirs, subject to the community rights of the surviving spouse.

 The right to recover all other damages caused by an offense or quasi offense, if the injured person dies, shall survive for a period of one year from the death of the deceased in favor of: (1) the surviving spouse and child or children of the deceased, or either such spouse or such child or children; (2) the surviving father and mother of the deceased, or either of them, if he left no spouse or child surviving; and (3) the surviving brothers and sisters of the deceased, or any of them, if he left no spouse, child, or parent surviving. The survivors in whose favor this right of action survives may also recover the damages which they sustained through the wrongful death of the deceased. A right to recover damages under the provisions of this paragraph is a property right which, on the death of the survivor in whose favor the right of action survived, is inherited by his legal, instituted, or irregular heirs, whether suit has been instituted thereon by the survivor or not.

 As used in this article, the words 'child', 'brother', 'sister', 'father', and 'mother' include a child, brother, sister, father, and mother, by adoption, respectively. (*As amended Acts 1960, No. 30, § 1.)*"

the maritime doctrine of laches their delay in suing is excusable. They say that they were minors at the time of their father's death, and that their mother, their natural tutrix, was advised by friends and relatives that she had to wait seven years before the death of her husband could be legally established. The question this case presents is whether in an admiralty proceeding the maritime doctrine of excusable laches can keep alive a state-created right of action for wrongful death that, according to state law, has expired. The district court dismissed the action on the libellee's motion for a summary judgment. Because of the "strange principle" that applicability of federal maritime law to a maritime tort on a state's navigable waters depends on whether the injury was fatal or non-fatal,[3] we are compelled to affirm.

## I.

■ A. Disposing of certain preliminary matters, we note, first, that in general maritime law, historically, a seaman's right to sue for personal injuries sustained as a result of a maritime accident died with the seaman. A similar archaic rule existed in the common law and was not changed in England until the passage of Lord Campbell's Act, the Fatal Accidents Act of 1846. Every state now has a wrongful death statute, but Congress has given only partial relief to a seaman's surviving dependents by adopting two limited wrongful death statutes. These are the Jones Act, 46 U.S.C. § 688, giving a seaman or his personal representative the right to sue his employer, and the Death on the High Seas Act, 46 U.S.C. 761 et seq., creating a cause of action for any wrongful death

"occurring on the high seas beyond a marine league from the shore of any State". Neither statute is applicable to the facts of this case. The only basis for an action for the wrongful death of a seaman on territorial waters within a state (other than an action against an employer) is a state's wrongful death statute. The Harrisburg, 1886, 119 U.S. 199, 7 S.Ct. 140, 30 L.Ed. 358; Butler v. Boston & Savannah S.S. Co., 1889, 130 U.S. 527, 555, 9 S.Ct. 612, 32 L.Ed. 1017.

■ B. If the plaintiffs may resort to the maritime doctrine of excusable laches, the court below should not have decided the issue on summary judgment. Larios v. Victory Carriers, Inc., 2 Cir. 1963, 316 F.2d 63. Compare McDaniel v. Gulf & South American Steamship Co., 5 Cir. 1955, 228 F.2d 189, with Morales v. Moore-McCormack Lines, 5 Cir. 1953, 208 F.2d 218. The issue of laches depends on the facts and is addressed to the discretion of the trial court. Czaplicki v. S.S. Hoegh Silvercloud, 1956, 351 U.S. 525, 76 S.Ct. 946, 100 L.Ed. 1387; Gardner v. Panama R. R., 1951, 342 U.S. 29, 30, 72 S.Ct. 12, 13, 96 L.Ed. 31; Pure Oil v. Snipes, 5 Cir. 1961, 293 F.2d 60, 69; Vega v. The Malula, 5 Cir. 1961, 291 F.2d 415, 418.

■ C. It is clear that in an admiralty case the Court is not bound by Erie and Klaxon.[4] Pope & Talbot, Inc. v. Hawn, 1953, 346 U.S. 406, 74 S.Ct. 202, 98 L.Ed. 143; Levinson v. Deupree, 1953, 345 U.S. 648, 73 S.Ct. 914; 97 L.Ed. 1319. In Levinson v. Deupree, involving a state-created cause of action, the Court observed that "Erie R. Co. v. Tompkins, 304 U.S. 64 [58 S.Ct. 817, 82 L.Ed. 1188], is irrelevant; [in such cases] The court in this case was not, 'in effect, only another court of the

---

3. It is a "strange principle that the substantive rules of law governing human conduct in regard to maritime torts vary in their origin depending on whether the conduct gives rise to a fatal or a non-fatal injury". Mr. Justice Brennan (Dissent), The Tungus v. Skovgaard, 358 U.S. 588, 611, 79 S.Ct. 503, 3 L.Ed.2d 524.

4. Erie R. R. v. Tompkins, 1934, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188; Klaxon Co. v. Stentor Electric Mfg. Co., Inc., 1941, 313 U.S. 487, 61 S.Ct. 1020, 85 L. Ed. 1477. See Hart & Wechsler, The Federal Courts and the Federal System 788–789; Wright, Federal Courts at 217; Stevens, "Erie R.R. v. Tompkins and the Uniform General Maritime Law", 64 Harv.L.Rev. 246 (1950).

State'." In Pope & Talbot, Inc. v. Hawn, a diversity suit, the Court declined to apply Erie to a federally-created cause of action (a maritime tort); the Court held that a state rule of contributory negligence was inapplicable to a suit by a carpenter for an injury sustained aboard a ship in navigable waters.

## II.

The contention that a seaman's dependents may resort to the doctrine of excusable laches to avoid limitations in a state wrongful death act has led a shadowy existence in dicta ever since The Harrisburg. In The Harrisburg the Supreme Court applied the state statute of limitations but reserved the laches question, intimating that in a proper case the doctrine might apply: "No question arises in this case as to the power of a court of admiralty to allow an equitable excuse for delay in suing, because no excuse of any kind has been shown." 119 U.S. at 214, 7 S.Ct. at 147. In Mejia v. United States, 5 Cir. 1946, 152 F.2d 686, cert. den'd 382 U.S. 862, this Court applied the Louisiana one year limitation period in a case based on the Louisiana action for wrongful death. Judge Borah, speaking for the Court, emphasized the peremptive aspect of Article 2315 but noted, "No equitable reason is set forth in appellants' motion to amend sufficient to justify the delay in the filing of the libel". 152 F.2d at 688.

The question The Harrisburg left open could be said to have been decided by implication in Western Fuel Co. v. Garcia, 1921, 257 U.S. 233, 42 S.Ct. 89, 66 L.Ed. 210.[5] On the facts in Garcia, the dependents of a stevedore killed on board a vessel had a strong case for application of the doctrine of excusable laches: the California statute of limitations had run while the administrator of Garcia's estate had pursued a state compensation

remedy later annulled on the authority of Southern Pacific Co. v. Jensen, 1917, 244 U.S. 205, 37 S.Ct. 524, 61 L.Ed. 1086. The Court held that expiration of the statutory period extinguished the right of action: "Time has been made of the essence of the right, and the right is lost if time is disregarded. * * * The limitations of the remedy are, therefore, to be treated as limitations of the right."

The language in the Garcia opinion and the rationale underlying it support the basic principle, spelled out in The Tungus, that when a state's wrongful death act is relied on in admiralty, all of the pertinent substantive law of the state rides with the libel.[6] In The Tungus v. Skovgaard, 1959, 358 U.S. 588, 79 S.Ct. 503, 3 L.Ed.2d 524, a maintenance foreman for a stevedoring company, while on board of the Tungus, slipped, fell, and breathed his last in a tank of hot coconut oil. A majority of the Court held that the New Jersey statute creating a right of action where death is caused "by a wrongful act, neglect or default" encompasses an action for death caused by unseaworthiness. Mr. Justice Stewart, for the Court, rejected the "broad argument" that the Court "disregard completely the conditions which the State has put upon the right it created". After quoting from The Harrisburg, the Court said:

"The decisions of this Court long ago established that when admiralty adopts a State's right of action for wrongful death, it must enforce the right as an integrated whole, with whatever conditions and limitations the creating State has attached. * * * The legislative history of the Death on the High Seas Act discloses a clear congressional purpose to leave 'unimpaired the rights under State statutes as to deaths on

5. See. Continental Casualty Co. v. The Benny Skou, 4 Cir. 1952, 200 F.2d 246, 250; Rose v. U.S.A., E.D.N.Y.1947, 73 F.Supp. 759, 763.

6. Hess v. United States, 1960, 361 U.S. 314, 80 S.Ct. 341, 4 L.Ed.2d 305 and

Goett v. Union Carbide Corp., 1960, 361 U.S. 340, 80 S.Ct. 357, 4 L.Ed.2d 341, cast doubt on The Tungus having a long life. See Baer, Admiralty Law of the Supreme Court § 1–19, 99–110 (1963). But see Emerson v. Holloway Concrete Products Co., 5 Cir. 1960. 282 F.2d 271, 282.

waters within the territorial jurisdiction of the States.' S.Rep.No. 215, 66th Cong., 1st Sess. 3; H.R. Rep.No.674, 66th Cong., 2d Sess. 3. The record of the debate in the House of Representatives preceding passage of the bill reflects deep concern that the power of the States to create actions for wrongful death in no way be affected by enactment of the federal law. 59 Cong.Rec. 4482–4486." The Tungus v. Skovgaard, 358 U.S. 588, 593, 79 S.Ct. 503, 506.

■■■ The rational basis for The Tungus, The Harrisburg, and this case is a conflict of laws approach. The court of the forum enforcing a right created under the laws of another jurisdiction must give effect to the right as it is defined in that other jurisdiction. As in conflicts generally, however, there are exceptions. Thus, a state's substantive law will not be enforced if it detracts from a right created by federal maritime law. Garrett v. Moore-McCormack Co., 1942, 317 U.S. 239, 63 S.Ct. 246, 87 L.Ed. 239. And purely procedural provisions may be overlooked. Levinson v. Deupree, 345 U.S. 648, 73 S.Ct. 914.

Levinson v. Deupree, 345 U.S. 648, 73 S.Ct. 914, underscores the Supreme Court's conflicts approach to the problem. In that case the administrator of the decedent's estate brought a wrongful death action in the district court under a Kentucky statute, which had a one year limitation period. The administrator, by mistake, had been appointed to act in the wrong county. After a year had passed, he corrected the defect and moved to amend his pleadings accordingly. The district court held that the amendment was barred by the state statute of limitations, because a Kentucky court would not have permitted the amendment of the pleadings to relate back to the time of the original filing of the suit. The court of appeals reversed; the Supreme Court affirmed. After pointing out that Erie was irrelevant, Justice Frankfurter, for the court, held that the district court should have enforced the state wrongful death statute

as any court enforces a cause of action created under the statute of a foreign nation.

"The District Court adopted and enforced the *obligatio* created by the State of Kentucky not because it sits in Kentucky and responds to the desirability of uniformity in the administration of justice within that State. In the absence of congressional action, the court adopted and enforced the *obligatio* created by Kentucky *as it would one originating in any foreign jurisdiction.* [Citing cases * * *] And it was bound to enforce it as it found it, but not bound beyond that to strive for uniformity of results in procedural niceties with the courts of the jurisdiction which originated the obligatio. Even in diversity cases, when 'a right is enforceable in a federal as well as in a State court,' and the federal court sits as 'another court of the State,' we have recognized that 'the forms and mode of enforcing the right may at times, naturally enough, vary because the two judicial systems are not identic.' Guaranty Trust Co. of New York v. York, supra, 326 U.S. at page 108, [65 S.Ct. 1464, at page 1469, 89 L.Ed. 2079]. Whether, if this were a diversity case, we would consider that we are here dealing with 'forms and modes' or with matters more seriously affecting the enforcement of the right, it is clear that we are not dealing with an integral part of the right created by Kentucky." (Emphasis added.) 345 U.S. at 651–52, 73 S.Ct. at 916.

In Bournias v. Atlantic Maritime Co., 2 Cir. 1955, 220 F.2d 152, Justice, then Judge, Harlan pointed out that Levinson v. Deupree established "the ground rules which govern a federal admiralty court in enforcing an *obligatio* created by Panamanian law." 220 F.2d 154.

■■■ There is a persuasive analogy between the role of a federal court applying a state wrongful death statute and the role of a federal court applying a

wrongful death statute of a foreign state or nation. A court enforcing an obligation created by a foreign state is bound to enforce the obligation as it finds it, but is not "bound by the dubious and perhaps conflicting intimations on *elegantia juris* to be found in local decisions" and is not "imprisoned by procedural niceties relating to amendment of pleadings". Levinson v. Deupree, 345 U.S. at 651, 73 S.Ct. at 916. Under usually accepted choice of laws' rules, procedural matters are governed by federal procedural law. If Western Fuel Co. v. Garcia is considered as having established an outcome-determinative test in federal maritime suits under state wrongful death statutes, in effect, that case was overruled by Levinson v. Deupree.[7] On the other hand, substantive matters which are integral parts of the state-created right, such as the standard of care, must be governed by state law. As the Supreme Court explained in Hess, "[Levinson v. Deupree] means that in an action for wrongful death in state territorial waters the conduct said to give rise to liability is to be measured not under admiralty's standards of duty, but under the substantive standards of the state law." Hess v. U. S. A., 1960, 361 U.S. 314, 80 S.Ct. 341, 4 L.Ed.2d 305, 310.

Levinson v. Deupree emphasizes the continuing importance of the familiar (if unclear and sometimes specious) distinction between procedure and substance. The crucial point here is whether the time limit imposed by Article 2315 of Louisiana Civil Code is a matter of substance or a matter of procedure.

## III.

 Louisiana courts, and courts generally, distinguish between a period of limitation that is prescriptive and therefore procedural and one that is peremptive, a condition of the right, and therefore substantive.[8] As the court of the forum, the federal court determines when the statutory limitation bars the right and not merely the remedy, but it is guided in this determination by the attributes the state attaches to the limitation. See Restatement, Second, Conflict of Laws, Tentative Draft No. 9, § 605, Comment C.

In Kozan v. Comstock, 5 Cir. 1959, 270 F.2d 839, 841, we said:

"Article 13 of the Louisiana Code of Practice provides: 'The forms, the effects, and the prescription of actions, are governed by the law of the place where they are brought * *' This article expresses the general rule, supported by ample Louisiana authority, that prescription is procedural and the law of the forum governs.

The principle that the prescriptive law of the forum governs is not without exceptions. If a foreign statute of limitations not only bars the remedy but extinguishes the substantive right as well, then the forum will apply the limitation period of the foreign jurisdiction."

For example, in Page v. Cameron Iron Works, Inc., 5 Cir. 1958, 259 F.2d 420, 422, we held that the one year prescriptive period provided in Article 3536 of the Civil Code is a procedural restraint barring the remedy but not extinguishing the right. And in the recent case of Fidelity & Casualty Company of New York v. C/B Mr. Kim, 5 Cir. 1965, 345 F.2d 45, the question was "whether a compensation insurer, as a Louisiana statutory subrogee, seeking reimburse-

---

7. Cf. Hill, "State Procedural Law in Federal Non-diversity Litigation, 69 Harv.L. Rev. 66, 103–108 (1955).

8. Guillory v. Avoyelles Ry. Co., La.S.Ct. 1900, 104 La. 11, 28 So. 899; Goodwin v. Bodcaw Lumber Co., La.S.Ct.1902, 109 La. 1050, 34 So. 74; Matthews v. Kansas City So. Ry. Co., 10 La.App. 382, 1929, 120 So. 907; Miller v. American Mut. Lia-

bility Ins. Co., et al., La.App., 1949, 42 So.2d 328; Romero v. Sims, La.App.1954, 68 So.2d 156; Lally v. Taylor, La.App., 1960, 117 So.2d 602; Bounds v. T. L. James & Co., W.D.La., 1954, 124 F.Supp. 563; Oppenheim, The Survival of Tort Actions and the Action for Wrongful Death—A Survey and a Proposal, 16 Tul. L.Rev. 386, 416 (1942).

ment from a vessel and its owner as tortious third parties may maintain a libel filed after the expiration of the state prescriptive period in which suit could be filed by the injured employee". Judge Brown, for the Court, held that "the forum here is the Federal District Court in which the equitable doctrine of laches, not prescription, is controlling as to a maritime claim".

 On the other hand, as Judge Borah wrote in Mejia, the "one-year limit of Article 2315 is not in the nature of a [statute of] limitation but is a peremption,[9] and, unless the right created by the Article is exercised within the one year period, it ceases to exist and is completely lost". 152 F.2d at 688. Thus, Article 2315 establishes an absolute peremption, not prescription, of the cause of action for one year; the period cannot be interrupted or continued beyond its term of one year. To the extent therefore that the libellants have a state-created right to recover under Article 2315 of the Louisiana Civil Code, that right ceased to exist when they failed to comply with the codal requirement of filing suit within one year from the date of their father's death.

In an analogous situation the Ninth Circuit has held that a cause of action for wrongful death occurring within California's territorial waters was subject to the California one-year limitation on an action for wrongful death and not the two-year limitation set forth in the Suits in Admiralty Act, 46 U.S.C. § 745, Allen v. United States, 9 Cir. 1964, 338 F.2d 160. The Court reached this result, enforcing "the right as an integrated whole with whatever conditions and limitations the creating state has attached" (The Tungus), even though the action was brought against the United States under the Public Vessels Act, 46 U.S.C. § 781–790, incorporating the limitations of the Suits in Admiralty Act for certain purposes.

## IV.

 The principles we have discussed are consistent with generally accepted principles of conflict of laws. The Harrisburg holding that the statute of limitations of the forum does not apply to foreign wrongful death actions, because the foreign limitation period is an integral part of the foreign cause of action, formed one of the bases of the traditional choice of law rule in wrongful death cases. See Restatement, First, Conflict of Laws, § 605; [10] Restatement, Second, Tentative Draft No. 9, § 391,[11] 397,[12] 605.[13] The Tungus holding that state

9. See Note 2.

10. "§ 605. TIME LIMITATIONS ON CAUSE OF ACTION.
If by the law of the state which has created a right of action, it is made a condition of the right that it shall expire after a certain period of limitation has elapsed, no action begun after the period has elapsed can be maintained in any state."

11. "§ 391. Right of Action for Death.
In an action for wrongful death, the local law of the state where the injury occurred determines the rights and liabilities of the parties, unless some other state has a more significant relationship with the occurrence and the parties as to the particular issue involved, in which event the local law of the latter state will govern."

12. "§ 397. Limitation of Action for Death.
Effect will be given in other states to a provision in the death statute of the state selected by application of the rule of § 391 which limits the time for bringing an action."

13. "§ 605. Foreign Statute of Limitations Barring the the Right.
An action will not be entertained in another state if it is barred in the state of the otherwise applicable law by a statute of limitations which bars the right and not merely the remedy.
\* \* \*
c. When statute of limitations bars the right. As stated in Comment b, it is for the forum courts to determine when a foreign statute of limitations bars the right and not merely the remedy. The almost invariable prerequisite is that the liability sought to be enforced must have been created by statute. Once this requirement has been met, the usual test is whether, in the opinion of the forum, the limitation provision was directed to the right 'so spe-

law governs the standard of care in negligence or unseaworthiness or both is the usual choice of law rule. Restatement, First, Conflict of Laws, §§ 379, 380; Restatement, Second, § 379(a), Comment e, § 380. The standard of care itself is substantive, though some aspects of its application may be procedural and governed by the law of the forum. Restatement, First, Conflict of Laws, § 595, Comment b; cf. Restatement, Second, §§ 380, 598. The Levinson v. Deupree holding that whether an amendment to pleadings will have retroactive effect is a question of procedure to be determined by federal admiralty rules is the usual choice of law rule that matters concerning amendment of pleadings are procedural. Restatement, First, Conflict of Laws, § 592 and Comment a; Restatement, Second, § 592 and Comment a.

Long before the American Law Institute began to wrestle with protean Conflicts, Holmes and others had begun to attack the position that statutes of limitations are necessarily procedural. The defendant, Justice Holmes has pointed out, "is entitled to the benefit of whatever conditions and limitations the foreign law creates. * * * [I]n cases where it has been possible to escape [characterization of prescription as procedural] by a reasonable distinction courts have been willing to treat limitations of time as standing like other limitations, and cutting down the defendant's liability whenever he is sued." Davis v. Mills, 1904, 194 U.S. 451, 24 S.Ct. 692, 48 L.Ed. 1067. Statutes of limitations and laches are the legal ef-

fects of conduct outside the courtroom. The state that creates the cause of action has an obvious interest in determining how long it can be enforced, but the forum has relatively little to set against the interest of the foreign state. There is something to be said for applying the prescriptive period of the forum if it is shorter than the foreign period: the courts of the forum should not be forced to decide stale claims merely because the foreign state has a longer period of limitation. But the forum has no particular interest in applying a *longer* period of limitation.

▮▮▮▮▮ In applying conflicts rules, courts reserve the right to refuse to enforce a foreign law if it is contrary to a strong public policy of the forum. But there is no strong policy of the forum requiring application of the doctrine of excusable laches to state wrongful death actions. For example, admiralty courts enforce strictly the limitations periods in the Jones Act and in the Death on the High Seas Act.[14] And in applying the doctrine of laches, federal courts are usually guided by the period of the analogous state statute of limitations.[15] After the statutory period has run, the libellant has the burden of proving that the delay has not prejudiced the respondent and that there is a good excuse to justify invocation of the doctrine. Vega v. The Malula, 5 Cir. 1961, 291 F.2d 415; McMahon v. Pan American World Airways, Inc., 5 Cir. 1962, 297 F.2d 268; Morales v. Moore-McCormack Lines, Inc., 5 Cir. 1953, 208 F.2d 218.

cifically as to warrant saying that it qualified the right' (Davis v. Mills, 194 U.S. 451, 454, 24 S.Ct. 692, 48 L.Ed. 1067 (1904). Other tests have at times been employed, as whether the statute of limitations has attributes in the state of its enactment which the forum would characterize as substantive, as that the defense need not be pleaded or that the obligation cannot be revived after the statutory period has elapsed.

The most common illustration of a situation where a statute of limitations will usually be held to bar the right is

when a statute creates but a single right of action and also contains a provision limiting the time in which actions under the statute may be brought. Wrongful death statutes are typical examples of statutes of this sort (see § 397)."

14. Roth v. Cox, 5 Cir. 1954, 210 F.2d 76, aff'd, 348 U.S. 207, 75 S.Ct. 242, 99 L.Ed. 260.

15. LeGate v. The Panamolga, 2 Cir. 1955, 221 F.2d 689; Kane v. Union of Soviet Socialist Republics, 3 Cir. 1951, 189 F.2d 303.

We come at last to an end foretold many years ago by The Harrisburg. The doctrine of excusable laches is deeply engrained in the maritime law—here it could have been asserted, if the seaman had lost a limb instead of his life —but this doctrine must yield to the power of a state to set a time limit on a right of action the state creates. This limitation, as Louisiana courts construe it, is an integral part of the right of action for wrongful death Louisiana created by Article 2315 of the Civil Code. In a proceeding in the federal courts to enforce this state-created right, federal courts, on accepted principles of conflicts of laws, respect the time limitation as a substantive condition incident to the right, not a procedural nicety relating to the remedy.

The judgment is affirmed.

\* \* \*

Having reached a result we regard as compelled by The Harrisburg, Garcia, The Tungus, Mejia, and other decisions, and having rationalized our holding as any appellate court must, we feel that it is not inappropriate to make a few comments prompted by the topsy-turvy result we reach in this case. As Justice Brennan has pointed out, it is a "strange principle" that requires a court to apply one law to a maritime tort when the injury is fatal and another law when the injury is not fatal.[16] This vagary in the law seems especially indefensible in placing a shipowner in a better position when he is responsible for a seaman's death than when he is responsible for a seaman's injury short of death. Here the seaman's dependents were deprived of the benefits of the maritime doctrine of excusable laches. But, in the present state of the law, it is only by the grace of Louisiana that Kenney's dependents would have any right to bring an action for wrongful death for a maritime tort occurring on navigable waters within

Louisiana or within one marine league of its borders. In other cases we have held that the Florida death statute does not allow recovery for death caused by unseaworthiness (Graham v. A. Lusi, Ltd., 5 Cir. (Florida) 1953, 206 F.2d 223) and that there is no recovery if the seaman is contributorily negligent (Byrd v. Napoleon Ave. Ferry Co., E.D.La. 1954, 125 F.Supp. 573, aff'd 227 F.2d 958, cert. den'd, 351 U.S. 925, 76 S.Ct. 783, 100 L.Ed. 1455). The Supreme Court holds that the Jones Act, providing a right of action for the death of a seaman caused by negligence, precludes recovery for unseaworthiness under a state wrongful death statute. Gillespie v. United States Steel Corporation, 1965, 379 U.S. 148, 85 S.Ct. 308, 13 L.Ed.2d 199.

Legislative solution of the problem in the form of a comprehensive federal statute tied in with the Jones Act and the Death on High Seas Act would, of course, be the best solution. We suggest, however, with the utmost deference, that the dissenting justices in The Tungus and in Gillespie v. United States Steel Corporation may have pointed the way to an acceptable judicial solution. The difference between laches and the Louisiana time limit set in Article 2315 and the difference between the three year limitation in the Jones Act and the one year limitation in the Louisiana Civil Code are not necessarily part of a price that must be paid for the federal system. The duty breached seems to us to be grounded in federal maritime law.[17] We submit, without elaborating the point, that the broad constitutional grant of jurisdiction to federal courts in "cases of Admiralty and Maritime Jurisdiction"[18] empowers federal courts to fashion a federal law of the sea permitting recovery for wrongful death on any navigable waters. The national interest in an effective merchant marine, the

16. See Note 3.

17. See D. Currie, "Federalism and the Admiralty: 'The Devil's own Mess,'" 1960 Supreme Court Review 158, 171–72, 193–198, 219–221; Comment, Admiralty Juris-

diction: Airplanes and Wrongful Death in Territorial Waters, 64 Col.L.Rev. 1084, 1100–1101 (1964); Note, 73 Harv.L.Rev. 84, 149–152.

18. U.S.Const., art. III, § 2.

growing importance of inland water transportation, and the increasing commercial activities on territorial waters, call for reconsideration of a federal court's powers in admiralty in wrongful death cases and the propriety of a uniform federal remedy for wrongful death occurring on a state's maritime waters. The State of Louisiana unquestionably has a legitimate interest in its citizens and in what happens to its citizens on the Mississippi River as it flows past New Orleans to the Gulf. But there is no improper federal intrusion in state affairs, if a federal remedy affords additional benefits to the dependents of a Louisiana seaman killed as a result of a maritime tort or breach of a maritime duty.