Mildred RHOADES, Individually and as Administratrix of the Estate of Claude Rhoades, Deceased, Plaintiff and Appellant,

v.

James C. WRIGHT, also known as James Clifford Wright, et al., Defendants and Respondents.

No. 14159.

Supreme Court of Utah.

July 8, 1976.

---

3. *State v. Darling*, 109 Ariz. 148, 506 P.2d 1042 (1973).

4. *State v. Schlarp*, 25 Ariz.App. 85, 541 P.2d 411 (1975).

5. *Rouse v. State*, Nev., 541 P.2d 643 (1975).

D. A. Frandsen, of Frandsen & Keller, Price, Arthur H. Nielsen and Randall Romrell, of Nielsen, Conder, Henriod & Gottfredson, Salt Lake City, for plaintiff-appellant.

P. Keith Nelson, of Brandt, Miller & Christopherson, Salt Lake City, for defendants-respondents.

MAUGHAN, Justice:

On appeal is an order of the trial court vacating a writ of attachment; holding that an "attachment is an improper method to confer jurisdiction in a wrongful death case where the tort sued upon arose in another state"; and that the court had no in rem jurisdiction. We reverse and remand for reinstatement of the writ.

In 1970, Claude Rhoades and James Wright each farmed different parcels of land located in Utah and in Colorado. In April of that year, James Wright shot and killed Claude Rhoades within the state of Colorado. Wright was tried, found guilty, and sentenced to life imprisonment; after which, it is alleged, he transferred his Utah property to his parents, Clifford Wright and Essie Wright, for no consideration.

Plaintiff commenced the wrongful death action in the United States District Court for the District of Utah, Central Division, serving defendants with process in Colorado. Plaintiff also sought and obtained a writ of attachment on the Utah property which Wright had transferred to his parents.

The decision of the United States District Court that it had jurisdiction based on Utah's Long-Arm Statute was appealed and reversed, by the United States Court of Appeals, Tenth Circuit.

At the time of the appeal to the Circuit Court, our rule [1] provided for an attachment in an "action to recover damages for any tort committed by a nonresident of this state against the person or property of a resident of this state." This was the rule which the federal court had before it. Prior to the commencement of the present action, viz., July 19, 1974, Rule 64C(a) had been amended, and it read:

The plaintiff, at any time after the filing of the complaint . . . in an action against a nonresident of this state, . . .

1. 64C(a), U.R.C.P.

It is pursuant to the amended rule the attachment in the instant action was levied.

The subject rule is narrowly drawn, requiring allegation of one or more of seven causes for attachment, but not in the alternative. These together with other limiting allegations, one of which prevents the attachment if the payment of the claim has been secured by any mortgage or lien on real or personal property. It also provides for a hearing, at the instance of the defendant, at any time, upon such notice to the plaintiff as the court may require. At which hearing the court passes on the justification for the writ. And this, of course, would be prior to the deprivation of any significant property interest. Under the facts in the instant matter, it is apparent the attachment was necessary to secure jurisdiction, which has been held to constitute a basic and important public interest.[2]

In the instant matter we consider neither the Long-Arm Statute nor Rule 64C(a) prior to its amendment. Such considerations were integral to the federal action, but are not present here.

[■■] It is well settled that a change in a governing statute, or rule of court, deprives a judgment, based on a former statute or rule, of its conclusiveness. Consequently, the federal judgment is not res judicata as to the present attachment.[3] It is also well established that a judgment dismissing an action for lack of jurisdiction is res judicata to that which was the subject of the judgment, but is not res judicata as to the merits of the action.[4]

The principal point raised on this appeal is the efficacy of the attachment to acquire jurisdiction for the purpose of litigating plaintiff's claim against defendants.

[■] This state, through its tribunals, may subject property owned by nonresi-

dents, and situated within its boundaries, to the payment of the demands of its own citizens against nonresidents. Such an exercise of jurisdiction does not infringe upon the sovereignty of the state where the nonresident is domiciled. Every state has an interest in its citizens and owes them its protection; and it is a legitimate acquittal of this duty of protection to hold and appropriate any property owned by nonresidents to satisfy just claims of its citizens.[5] In *Bristol v. Brent* [6] this court said:

In attachment proceedings against a nonresident defendant where personal service on him is lacking it is elementary that the court must obtain jurisdiction of the property of the defendant. This is an ordinary attachment is obtained by seizure of it by the officer, and this seizure places the property in the custody of the law to be so held until the court determines whether or not a plaintiff in the action is entitled to judgment in the main case.

Section 66 of the Restatement 2d of the Conflict of Laws is as follows:

A state has power to exercise judicial jurisdiction to apply to the satisfaction of a claim interests in a tangible thing that is subject to its judicial jurisdiction and belongs to the person against whom the claim is asserted, although the person himself is not subject to the jurisdiction of the state.

Any judgment obtained pursuant to this procedure reaches only as far as the res which has been attached, and only to the extent of its value; it does not impose a personal obligation upon the person against whom the claim is exercised, if he is not personally subject to the jurisdiction of the state.

[■] The power of a state to exercise judicial jurisdiction, i. e., jurisdiction over

---

2. *Ownbey v. Morgan*, 256 U.S. 94, 41 S.Ct. 433, 65 L.Ed. 837, 17 A.L.R. 873 (1921).

3. 49 A.L.R.2d 1036, Sec. 2.

4. Moore's Federal Practice, para. 41.14(a), pp. 1173–1174.

5. *Pennoyer v. Neff*, 95 U.S. 714, 24 L.Ed. 565 (1877).

6. 36 Utah 108, 114, 103 P. 1076, 1079 (1909).

the interests of persons in things, within the jurisdictional limits of the state, depends upon the relationship of the thing to the state. The power is there if the relationship of the thing to the state is of such a nature as to make the exercise of such jurisdiction reasonable. Where, as here, the thing is land, which by its nature is immovable, the state of the situs may reasonably exercise judicial jurisdiction against all persons to determine interests therein.[7] Reasonable notice to defendant is essential, and that it be clear the action is directed against the thing.

Here, it is well to make the distinction made in the more modern cases and treatises between jurisdiction in rem and jurisdiction quasi-in-rem. In the former some existing claim upon the thing itself is asserted. In a quasi-in-rem action a court will use its power over the property to provide a remedy for a claim not directly related to the thing itself.[8] The jurisdiction of the court to inquire into and determine the obligations of the nonresident is only incidental to its jurisdiction over the property.[9]

An interesting case similar to the one at hand is *Wilcox v. Richmond, Fredericksburg & Potomac Railroad Co.*[10] There a New York resident had attached property belonging to an out of state corporation. The United States District Court determined the attachment under attack was authorized by an existing New York rule; that under Rule 4(e), F.R.C.P. (as amended in 1963) the federal court was authorized to proceed with attachment. The court went on to say:

> Moreover, ever since *Pennoyer v. Neff* has been no doubt that the presence of property within a state provides a basis for that state's adjudicating any legally enforceable claim against the absent owner to the extent it can be satisfied out of the property on which jurisdiction was grounded. This traditional form of quasi in rem jurisdiction was approved in *Harris v. Balk,* 198 U.S. 215, 25 S.Ct. 625, 49 L.Ed. 1023 (1905), holding that, for purposes of garnishment, jurisdiction was proper wherever the debtor or garnishee could be found. Despite the drastic expansion of the permissible limits of in personam jurisdiction.

In Pennoyer [11] the court said:

> So the state, through its tribunals, may subject property situated within its limits owned by nonresidents to the payment of the demand of its own citizens against them; and the exercise of this jurisdiction in no respect infringes upon the sovereignty of the state where the owners are domiciled. Every state owes protection to its own citizens; and, when nonresidents deal with them, it is a legitimate and just exercise of authority to hold and appropriate any property owned by such nonresidents to satisfy the claims of its citizens. It is in virtue of the state's jurisdiction over the property of the nonresidents situated within its limits that its tribunals can inquire into that nonresidents' obligations to its own citizens, and the inquiry can then be carried only to the extent necessary to control the disposition of the property. If the nonresidents have no property in the state, there is nothing upon which the tribunal can adjudicate.

Furthermore, as noted in Pennoyer, such views were not new at the time of the Pennoyer decision.

An interesting rationale supported by the mainstream of American life is found in *Ownbey v. Morgan.*[12] There the court had under consideration a Delaware statute

---

7. Restatement 2d of the Conflict of Laws, Sec. 56, p. 192.

8. 1 Beale, Conflict of Laws, Sec. 106.1, p. 449 (1935).

9. *Pennoyer v. Neff*, ibid.

10. D.C., 270 F.Supp. 454 (1967).

11. At pp. 723–724 of 95 U.S., 24 L.Ed. 565.

12. Footnote 2.

concerning foreign attachments, and in the course of its opinion said:

> Our circumstances as a nation have tended peculiarly to give importance to a remedy of this character. The division of our extended domain into many different states, each limitedly sovereign within its territory, inhabited by a people enjoying unrestrained privilege of transit from place to place in each state, and from state to state; taken in connection with the universal and unexampled expansion of credit, and with the prevalent abolishment of imprisonment for debt, would naturally, and of necessity, lead to the establishment, and, as experience has demonstrated, the enlargement and extension of remedies acting upon the property of others.

How much more appropriate that rationale is today than in 1921. The attachment levied in the instant matter is authorized under Rule 64C(a), as amended; thus, is proper.

TUCKETT, J., concurs.

CROCKETT, Justice (concurring).

This appeal challenges the granting of the defendant's motion to vacate the writ of attachment on real property, which was issued for the purpose of acquiring jurisdiction over the defendants, to sue for a tort, the alleged wrongful death of Plaintiff's husband, committed in Colorado. I realize the difficulties that may ramify if a plaintiff, by simply alleging a tort claim of any kind, spurious or otherwise, and the issuing of an attachment upon any property, e. g., a car, a trailer home of one traveling through the forum state, can thus obtain jurisdiction over a resident of another state. I therefore desire to limit my concurrence to the particular fact situation in this case.

It is unquestionable that the courts of this State can issue writs of attachment upon the grounds and under the procedure prescribed in rule 64C(a) and that by doing so, the real property is taken within the present jurisdiction of the court, which then can be dealt with according to the rights the litigants assert in that property. Notwithstanding the fact that the allegation is that the tort was committed in the state of Colorado, there is an additional aspect of this case which I think is of some significance. There is also involved in this action the allegation that the real property in Utah has been the subject of an illusory conveyance to the defendant's parents for the purpose of hindering, and defrauding the plaintiff in pursuing her remedy. In view of the dual aspects of the cause of action asserted by the plaintiff involving this real property I concur with the conclusion that the attachment should not have been vacated, and that the action is maintainable in our courts as one in rem against that property.[1]

In regard to the question whether the judgment in the federal court is res judicata, I think it is pertinent to observe that under our law any case may be commenced again within one year after a dismissal for any reason not on the merits.[2]

HENRIOD, C. J., dissents.

ELLETT, J., dissents.

---

1. See *State ex rel. Boyer v. Superior Court, etc.*, 115 Wash. 359, 197 P. 321 (1921).

2. Sec. 78-12-40, U.C.A.1953.