Mildred RHOADES, individually and as Administratrix of the Estate of Claude Rhoades, deceased, Plaintiff and Appellant,

v.

James C. WRIGHT, also known as James Clifford Wright, and Clifford Wright and Essie Wright, his wife, Defendants and Respondents.

No. 16246.

Supreme Court of Utah.

Nov. 26, 1980.

9. *Charlton v. Hackett*, 11 Utah 2d 389, 360 P.2d 176 (1961).

Arthur H. Nielsen and Robert Walter, Jensen of Nielsen, Henriod, Gottfredson & Peck, Salt Lake City, Duane A. Frandsen of Frandsen, Keller & Jensen, Price, for plaintiff and appellant.

Glenn C. Hanni and Philip R. Fishler of Strong & Hanni, Salt Lake City, for defendants and respondents.

WILKINS, Justice:

This is an appeal from an order of the District Court of San Juan County dismissing plaintiff's complaint seeking damages for the wrongful death of plaintiff's husband.

The underlying facts surrounding the wrongful death action can be found in extenso in the opinion of this Court in *Rhoades v. Wright*, Utah, 552 P.2d 131 (1976) (hereafter *Rhoades I*). However, the following brief recitation of the facts is repeated here to provide the framework upon which decision of this case rests.

Plaintiff and her husband, Claude Rhoades, lived approximately three-quarters of a mile on the Utah side of the Utah-Colorado border. Mr. Rhoades farmed land that he owned in Utah and land that he leased in Colorado. Defendant James C. Wright lived about two miles on the Colorado side of the border with his parents, Defendants Clifford and Essie Wright. Wright farmed land owned by him and his parents both in Colorado and Utah.

Because of the location of the lands each owned and farmed, both Rhoades and Wright moved back and forth across the border frequently. On April 19, 1970, all of the parties herein were inspecting portions of their respective farms. On a country road in Colorado and within a few miles of the border, James Wright shot and killed Claude Rhoades.

On September 19, 1971, plaintiff commenced a wrongful death action in the United States District Court for Utah alleging diversity jurisdiction and personal jurisdiction over defendants under the Utah Long-Arm Statute, Section 78–27–24, et seq.[1] That suit was subsequently dismissed without prejudice on September 19, 1973, after appeal to the Tenth Circuit Court of Appeals on the ground that the United States District Court could not exercise personal jurisdiction over the defendants based on the Long-Arm Statute.[2]

Thereafter on July 29, 1974, plaintiff commenced simultaneous wrongful death actions in the Colorado District Court for Dolores County and the Utah District Court for San Juan County.

Defendants were subsequently granted summary judgment by the Colorado court dismissing plaintiff's complaint based on the running of the Colorado statute of limitations applicable to wrongful death actions. The dismissal occurred prior to this Court's decision in *Rhoades I*.

In *Rhoades I* we reversed an order of the District Court vacating a writ of attachment on defendants' Utah property, holding that the attachment was a proper method of conferring jurisdiction.

After remand of *Rhoades I*, defendants filed in the Utah District Court a motion for an order quashing service of process or, alternatively, dismissing the plaintiff's complaint. As bases for this motion defendants alleged that (1) plaintiff lacked standing, (2) the District Court lacked jurisdiction, and (3) plaintiff's claim was barred by the Colorado statute of limitations. In grant-

---

1. All references are to Utah Code Ann., 1953, as amended, unless otherwise noted.

2. Unpublished *per curiam* decision filed July 23, 1973.

ing the motion to dismiss, the District Court in its memorandum decision (1) ruled that plaintiff did have standing, (2) deferred ruling on the jurisdictional issue, and (3) ruled that plaintiff's claim was governed by the Colorado statute of limitations for wrongful death actions and "under the substantive law of Colorado no cause of action exists."

On appeal defendants have not questioned the ruling of the District Court as to plaintiff's standing, and we therefore do not address that issue. Defendants do urge as an alternative basis for affirming the order of dismissal that federal due process requirements preclude the exercise of jurisdiction by the Utah Court. Plaintiff urges this Court to adopt new choice-of-law principles with respect to multi-state wrongful death actions which would result in the application of Utah law, rather than Colorado law, to this case.

## I.

In *Rhoades I*, this Court ruled that the Utah court could properly exercise jurisdiction in this case based on the attachment of property owned by defendants and situated in Utah. Defendants now urge that the intervening case of *Shaffer v. Heitner*, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977) dictates that the exercise of quasi in rem jurisdiction of the type involved in this case [3] is no longer constitutionally permissible under the Due Process Clause of the Fourteenth Amendment. We hold that the exercise of quasi in rem jurisdiction in this case comports with the requirements of due process for the reasons noted *infra*.

The Court in *Shaffer* held that "all assertions of state court jurisdiction must be evaluated according to the standards set forth in *International Shoe [Co. v. Washington*, 326 U.S. 310, [66 S.Ct. 154, 90 L.Ed. 95] (1945)] and its progeny."[4] In *International Shoe*, the Court held that a state may exercise jurisdiction over a non-resident defendant only if the defendant has "certain minimum contacts with [the state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' *Milliken v. Meyer*, 311 U.S. 457, 463 [61 S.Ct. 339, 343, 85 L.Ed. 278]."[5]

*Shaffer* involved the exercise of jurisdiction by the Delaware courts based on the sequestration of stock in a Delaware corporation, which stock was deemed, pursuant to Delaware statute, to be present in Delaware. The sequestration procedure was used in *Shaffer* to require certain officers and directors of the subject Delaware corporation, who were also stockholders, to submit themselves to personal jurisdiction in Delaware for the purpose of defending a stockholder's derivative suit. The Supreme Court held that this procedure violated the process due defendants where those defendants *had no minimum contacts with Delaware other than the ownership* of stock in a Delaware corporation. And as was pointed out, *ante*, in so holding the United States Supreme Court imposed the same due process requirements on the exercise of in rem and quasi in rem jurisdiction that had previously been set forth in *International Shoe* as requirements for the exercise of in personam jurisdiction.

One may sense force in the argument that the application of the *International*

---

**3.** As explained in n. 17 of *Shaffer*, the Supreme Court there chose to use the term "in rem" to describe both in rem and quasi in rem jurisdictions. In quoting *Hanson v. Denckla*, 357 U.S. 235, 246, n. 12, 78 S.Ct. 1228, 1235 n. 12, 2 L.Ed.2d 1283 (1958), the *Shaffer* Court did acknowledge the distinctions in these types of jurisdiction. That quote from *Hanson* stated:

"A judgment in rem affects the interests of all persons in designated property. A judgment quasi in rem affects the interests of particular persons in designated property. The latter is of two types. In one the plaintiff is seeking to secure a pre-existing claim in the subject property and to extinguish or establish the nonexistence of similar interests of particular persons. In the other the plaintiff seeks to apply what he concedes to be the property of the defendant to the satisfaction of a claim against him. Restatement, Judgments, 5–9."

The instant case involves quasi in rem jurisdiction of the second type.

**4.** 433 U.S. at 212, 97 S.Ct. at 2584.

**5.** 326 U.S. at 316, 66 S.Ct. at 158.

*Shoe* standard to all exercises of state court jurisdiction effectively eliminates quasi in rem jurisdiction of the type involved in this case.[6] However, we conclude that if the Supreme Court had intended to declare such jurisdiction constitutionally impermissible, it would have done so directly. Additionally, there are indications in *Shaffer* itself that the Court was of the view that quasi in rem jurisdiction has continued viability in certain situations.[7] In our view, this case presents just such a situation. When we analyze the due process requirements laid down in *International Shoe* and *Shaffer*, together with the unique aspects of quasi in rem jurisdiction of the type involved here and the facts present here, we conclude that "traditional notions of fair play and substantial justice" are not offended by holding that the Utah courts may properly exercise jurisdiction.

As the Supreme Court stated in *Rush v. Savchuk*, 444 U.S. 320, 327, 100 S.Ct. 571, 577, 62 L.Ed.2d 516 (1980):

> In determining whether a particular exercise of state court jurisdiction is consistent with due process, the inquiry must focus on "the relationship among the defendant, the forum, and the litigation." (citing *Shaffer*, supra, 433 U.S. at 204 [97 S.Ct. at 2580])

We direct our inquiry, therefore, to those relationships in this case.

**1.** *Relationship between defendants and forum* —This element incorporates the "minimum contacts" requirement of *International Shoe*. Here, defendants are the owners of land situated in Utah.[8] While according to *Shaffer* the presence of property alone can not support the exercise by this State of jurisdiction, the fact of ownership can "suggest the existence of other ties."[9] A further contact present in this case is the fact the defendants farmed and otherwise used the land located in Utah. We consider the presence of defendants' land—decidedly tangible and immovable— together with use of the land to be sufficient contacts by defendants with this State to support the exercise of jurisdiction.

Furthermore, the ownership and use of land here by defendants provides that "purposeful activity related to the forum that would make the exercise of jurisdiction fair, just, [and] reasonable."[10] Although there are some indications in Supreme Court opinions that this purposeful activity must relate in some way to the underlying litigation,[11] we believe that the primary focus remains on "traditional notions of fair play and substantial justice."[12]

At this point, the unique aspects of quasi in rem jurisdiction of the type involved here become vivified. While it is true that this

**6.** Cf., *Shaffer v. Heitner*, supra, 433 U.S. at 211, n. 31, 97 S.Ct. at 2582 n. 31.

**7.** See, Id., 433 U.S. at 211, n. 37, 97 S.Ct. at 2583 n. 37, and at 212, n. 39, 97 S.Ct. at 2584 n. 39. See also Id. at 217, 97 S.Ct. at 2586, Powell, J., concurring; at 218, 97 S.Ct. at 2587, Stevens, J., concurring in the judgment; and Note, *Suggested Limitations on Application of In Personam Standards to State Jurisdictional Questions: A Critique of Shaffer*, 46 Geo.Wash. U.L.Rev. 581 (1979). The Court throughout *Shaffer* used the generic term "property". *Shaffer* involved stock certificates. The subsequent case of *Rush v. Savchuk*, 444 U.S. 320, 100 S.Ct. 571, 62 L.Ed.2d 516 (1980) involved a debt. The Court has not yet applied its analysis to a case involving real property.

**8.** The record herein reflects that prior to the shooting in question the land was owned by James C. Wright. Thereafter, and apparently after his conviction in Colorado for murder, he conveyed the land in question to his parents, Clifford and Essie Wright, allegedly without consideration and for the purpose to defraud plaintiff as a potential creditor.

**9.** 433 U.S. at 209, 97 S.Ct. at 2582.

**10.** *Rush v. Savchuk*, supra, 444 U.S. at 329, 100 S.Ct. at 577; citing *Kulko v. California Superior Court*, 436 U.S. 84, 93–94, 98 S.Ct. 1690, 1697–98, 56 L.Ed.2d 132 (1978) and *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1952).

**11.** *International Shoe*, supra, 326 U.S. at 320, 66 S.Ct. at 160; *Shaffer*, supra, 433 U.S. at 213, 97 S.Ct. at 2584.

**12.** It must also be recognized that the requirement that the cause of action "arise out of" the contacts with the State is not present in a quasi in rem situation but is central to any determination of jurisdiction in the setting of the Utah Long-Arm Statute, § 78–27–24.

action is for wrongful death, jurisdiction was asserted by the attachment of defendants' land situated in Utah. The land, ultimately, is what is at stake, because it is out of the land—and only to the extent of the value of the land—that plaintiff can, if successful, seek satisfaction of her judgment. Thus, the interest of defendants in their land located in Utah is, in a very real sense, the prime issue. And, since the ownership and use of defendants' Utah land are acts "by which the defendant[s] purposefully avail[ed themselves] of the privilege of conducting activities within the forum State thus invoking the benefits and protection of its laws," [13] the exercise of jurisdiction by the Utah court is fair and reasonable.[14] Particularly where the ownership and use of that land is coupled with the killing by Defendant James C. Wright of a Utah resident, defendants had every "reason to expect to be haled before a [Utah] court." [15]

2. *Relationship between forum and litigation*—This prong of the three-part due process test concentrates on Utah's interest, if any, in adjudicating this dispute.

The implicit interest of Utah is, of course, in assuring that heirs, either individually or through a personal representative have the opportunity to recover compensation for the wrongful death of a Utah resident.[16] As was stated in *McGee v. International Life Ins. Co.*, 355 U.S. 220, 223, 78 S.Ct. 199, 201, 2 L.Ed.2d 223 (1957):

It cannot be denied that [a state] has a manifest interest in providing effective means of redress for its residents...

■ Utah's interest is even stronger in this case because Utah must be viewed as the last forum available to plaintiff.[17] Plaintiff's interest in having her claim heard on its merits is in no way protected by her power to choose the forum because the Utah forum is the only one now available. We are mindful that plaintiff has attempted to litigate her claim both in the United States District Court for Utah and the Colorado District Court. However, in neither instance was plaintiff permitted to reach the merits of her claim. It cannot be denied that so far as this case is concerned, plaintiff has no other available forum. This fact, coupled with the fact that quasi in rem jurisdiction of the type involved here is jurisdiction of a type normally sought by litigants as a last resort,[18] weighs heavily in our determination that the relationship between Utah and the litigation supports the exercise of jurisdiction by the Utah court.[19]

3. *Relationship between defendants and litigation*—This element focuses on the relative convenience of the defendants in being required to appear and defend in the courts of Utah. Fairness and substantial justice again provide the touchstones for evaluation of this element.

The immediately apparent aspect of fairness in this regard is the procedural due process requirements of notice and opportunity to be heard.[20] In addition to the attachment of defendants' Utah real proper-

13. *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958), citing, *International Shoe*, supra, 326 U.S. at 319, 66 S.Ct. at 159.

14. In both *Shaffer* and *Rush*, jurisdiction failed on this very issue, i. e., the Court found no contacts between the defendants and the forum.

15. *Shaffer v. Heitner*, supra, 433 U.S. at 216, 97 S.Ct. at 2586.

16. We find no merit in defendants' contention that plaintiff and decedent were not at the time of the shooting residents of Utah. They clearly owned land in Utah, farmed it, presumably paid taxes, and licensed their vehicles in Utah.

17. See, *Shaffer*, 433 U.S. at 211, n. 37, 97 S.Ct. at 2583 n. 37.

18. This is so because plaintiff's recovery, if any, is limited to the value of the property attached.

19. The Court in *Shaffer* and *Rush* found that in each case there was no connection between the litigation and the forum as well as a lack of minimum contacts between the defendant and the forum.

20. See, e. g., *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 342, 85 L.Ed. 278 (1940).

ty, process was served on each defendant personally in Colorado. Defendants therefore have clearly had notice.

Once it is established that defendants have been afforded notice, we must examine whether they have been afforded a reasonable opportunity to be heard. That opportunity must be evaluated primarily in light of whether it would be inconvenient for them to be required to defend in the Utah courts. As stated by the Supreme Court in *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980):

> The protection against inconvenient litigation is typically described in terms of "reasonableness" or "fairness."... Implicit in this emphasis on reasonableness is the understanding that the burden of the defendant, while always a primary concern, will in an appropriate case be considered in light of other relevant factors, including the forum State's interest in adjudicating the dispute, see *McGee v. International Life Ins. Co.*, 335 U.S. 220, 223 [78 S.Ct. 199, 201, 2 L.Ed.2d 223] (1957); the plaintiff's interest in obtaining convenient and effective relief, see *Kulko v. Superior Court, supra*, at 92 [98 S.Ct. at 1697, 56 L.Ed.2d 132], at least when that interest is not adequately protected by the plaintiff's power to choose the forum, cf. *Shaffer v. Heitner*, 433 U.S. 186, 211, n. 37 [97 S.Ct. 2569, 2583, n. 37, 53 L.Ed.2d 683] (1977); the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several States in furthering fundamental substantive social policies, see *Kulko v. Court, supra*, at 93, 98 [98 S.Ct. at 1697, 1700, 56 L.Ed.2d 132].

With reference to this case, we have already determined that Utah has a strong interest in adjudicating this dispute. We have also shown that the plaintiff's interest in obtaining convenient and effective relief is not protected by her power to choose the forum because she no longer has any such power. Finally, in our view, Utah and Colorado both have an interest in obtaining the most efficient resolution of controversies and that interest will be served by allowing plaintiff to present the merits of her case. No fundamental substantive social policy will be impaired by the exercise of jurisdiction by the Utah courts.

Additionally, the statement quoted above from *Woodson* recognizes that the foregoing three-part test, rather than being a set formula, is a balancing test. The application of the test in *Shaffer* and *Rush* showed that the exercise of jurisdiction was constitutionally infirm. (See nn. 12, 17, *ante*.) Here, though, we believe that application of the test leads to the conclusion that the Utah courts may constitutionally exercise quasi in rem jurisdiction.[21]

## II.

Having made the determination that the exercise of jurisdiction by the Utah court is constitutionally permissible we move to the choice-of-law issue.

Defendants maintain initially that the judgment of the Colorado District Court must be given full faith and credit by the Utah courts pursuant to Article IV, Section 1 of the United States Constitution.[22] As the Full Faith and Credit Clause makes the doctrine of res judicata operative throughout the federal system,[23] we also consider

---

**21.** In their brief on appeal, defendants argue that the Tenth Circuit Court's determination that the Utah Federal District Court could not exercise jurisdiction based on the Utah Long-Arm Statute constitutes res judicata as to the jurisdictional issue presented here. A review of the record reveals that this contention was raised for the first time on appeal. Therefore, under well-established principles of judicial review we will not address that contention here.

**22.** "Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State. And the Congress may by general Laws prescribe the manner in which such Acts, Records, and Proceedings shall be proved and the Effect thereof."

**23.** See, e. g., *Durfee v. Duke*, 375 U.S. 106, 84 S.Ct. 242, 11 L.Ed.2d 186 (1963); *Riley v. New York Trust Co.*, 315 U.S. 343, 62 S.Ct. 608, 86 L.Ed. 885 (1942), rehearing denied 315 U.S.

under this analysis defendants' claim that the Colorado judgment is res judicata and bars plaintiff's Utah action.

It is clear that res judicata principles do not present a bar to this action and that the Colorado judgment is not dispositive of this case. It is well established that a state need not recognize a foreign judgment which is based merely on the running of the local statute of limitations.[24] This rule is generally restricted to statutes of limitation characterized as procedural rather than substantive.

In determining whether the statute of limitations found within the Colorado Wrongful Death Act is substantive or procedural, we look to the characteristics attributed to the statute by Colorado decisions.[25] Thus, Colorado has tolled its statute of limitations for minors in wrongful death actions pursuant to a tolling provision not appearing within the wrongful death statute itself.[26] This ruling is clearly predicated upon the proposition that the statute of limitations is procedural,[27] and inconsistent with a substantive characterization.[28]

Although the majority of jurisdictions consider the statutes of limitation governing wrongful death actions to be a substantive matter barring the right and not merely the remedy,[29] a procedural characterization affecting only the remedy is not without precedent. Numerous courts have interpreted wrongful death limitation periods

as procedural in light of statutory time restrictions which appear within the actual wrongful death act, as well as without.[30]

Text writers as well have criticized the substantive characterization given to wrongful death statutes of limitation. For example, Professors Harper and James, in their treatise on torts, state:

> Today ... there is no valid reason for special strictness in treating time limitations upon death actions. Such actions present no problems of preparation, or of the perpetuation of evidence, or of the need for repose, which set them apart from other accident cases, from the point of view of defendants. Wherever the question is an open one so far as statutory construction is concerned, it is submitted that the limitation period for death actions should be treated just as are general statutes of limitation for personal injury and property damage actions. And legislatures might well be prevailed upon to remove distinctions which have been imbedded in the law of many of our states.[31]

■ Since a judgment based on the running of a local statute of limitations is not a bar to a subsequent action based on the same facts in a sister state,[32] plaintiff is not barred under the full faith and credit clause from bringing suit in Utah.

---

829, 62 S.Ct. 903, 86 L.Ed. 1223; and, generally, 47 Am.Jur.2d, Judgments, § 1226.

**24.** *Titus v. Wells Fargo Bank and Union Trust Company*, 134 F.2d 223 (5th Cir. 1943); *Stokke v. Southern Pacific Company*, 169 F.2d 42 (10th Cir. 1948); *Western Coal and Mineral Company v. Jones*, 27 Cal.2d 819, 167 P.2d 719 (Calif. 1946).

**25.** See *Wood & Selick v. Compaigne Generale, Transatlantique*, 43 F. 941 (2nd Cir. 1930).

**26.** Section 87–2–3 Colorado Revised Statutes (1963); § 13–81–103 Colorado Revised Statutes (1974); *Price v. Sommermeyer*, 584 P.2d 1220 (Colo.App.1978).

**27.** *Gaudette v. Webb*, 362 Mass. 60, 284 N.E.2d 222 (1972).

**28.** See, e. g., *Nicholson v. Lockwood Greene Engineers, Inc.*, 278 Ala. 497, 179 So.2d 76

(1965), *Western Coal & Min. Co. v. Hise*, 216 F. 338 (8th Cir. 1914); *Goodwin v. Bodcaw Lumber Co.*, 109 La. 1050, 34 So. 74 (1902).

**29.** This result stems from the classification of wrongful death acts as statutory law in derogation of any common law right.

**30.** See, e. g., *Seely v. Cowley*, 12 Utah 2d 252, 365 P.2d 63 (1961); *Gaudette v. Webb*, supra; *Brookshire v. Burkhart*, 141 Okl. 1, 283 P. 571 (Okl.1930); *Wohlgemuth v. Meyer*, 139 Cal. App.2d 326, 293 P.2d 816 (Cal.App.1956).

**31.** 2 Harper & James, Torts 1296 (1956).

**32.** *Titus v. Wells Fargo Bank and Union Trust*, supra; *Stokke v. Southern Pacific Company*, supra; *Biewend v. Biewend*, 17 Cal.2d 108, 109 P.2d 701 (Cal.1941).

Even assuming that the statute of limitations for Colorado's wrongful death action is substantive, that fact would not, in light of *Wells v. Simonds Abrasive Co.*, 345 U.S. 514, 517–518, 73 S.Ct. 856, 857–58, 97 L.Ed. 1211 (1953), call for a contrary result:

The rule that the limitations of the forum apply (which this Court has said meets the requirements of full faith and credit) is the usual conflicts rule of the states. However, there have been divergent views when a foreign statutory right unknown to the common law has a period of limitation included in the section creating the right. The Alabama statute here involved creates such a right and contains a built-in limitation. The view is held in some jurisdictions that such a limitation is so intimately connected with the right that it must be enforced in the forum state along with the substantive right.

We are not concerned with the reasons which have led some states for their own purposes to adopt the foreign limitation, instead of their own, in such a situation. The question here in whether the Full Faith and Credit Clause compels them to do so. Our prevailing rule is that the Full Faith and Credit Clause does not compel the forum state to use the period of limitation of a foreign state. We see no reason in the present situation to graft an exception onto it. Differences based upon whether the foreign right was known to the common law or upon the arrangement of the code of the foreign state are too unsubstantial to form the basis for constitutional distinctions under the Full Faith and Credit Clause. (Footnotes omitted.)

■ *Wells* applied the forum's shorter statute of limitations, thus dismissing an action which was not yet barred by the law of the foreign state upon which the wrongful death action was predicated. The instant case involves two identical statutes of limitation for wrongful death. The conflict arises from the Colorado court's refusal to apply the renewal statute, Section 13–80–128, Colorado Revised Statutes (1973), Section 87–1–29 Colorado Revised Statutes (1963), to a wrongful death action, an application which would have allowed the Colorado suit to be brought within one year of the dismissal of the federal action which was based on lack of jurisdiction. The Colorado court's decision not to apply that tolling procedure did not result from a substantive-procedural analysis, but rather was based simply on the fact that the renewal provision applies by express statutory terms only to those actions commenced within the period allowed by the general statute of limitations provisions (Article 80), an article which does not include the period in which a wrongful death action must be brought. In applying the Utah limitation provision for wrongful death actions, a matter previously determined by this Court to affect the remedy and not the cause of action itself,[33] we hold that the Utah tolling statute applies and extends the time to bring suit to one year after the dismissal of the federal action, a limitation complied with in this case.[34] The consequence of applying our limitation period along with the tolling provision is to extend the time for bringing suit beyond that allowed by Colorado. The fact that the Utah wrongful death statute of limitations is not longer than that of Colorado warrants the application of the *Wells v. Simonds Abrasive Co.* holding to this case without extending its scope.

**33.** *Switzer v. Reynolds*, Utah, 606 P.2d 244 (1980); *Seely v. Cowley*, supra.

**34.** *Section 78–12–40 provides:*

If *any* action is commenced within due time and a judgment thereon for the plaintiff is reversed, or if the plaintiff fails in such action or upon a cause of action otherwise than upon the merits, and the time limited either by law or contract for commencing the same shall have expired, the plaintiff, or if he dies and the cause of action survives, his representatives, may commence a new action within one year after the reversal or failure. (*Emphasis added.*)

The Federal District Court action was commenced within two years of the death; was dismissed without prejudice for lack of jurisdiction and hence other than on the merits; and the subsequent Utah District Court action was filed within one year of that dismissal.

As for the additional time provided plaintiff by applying the tolling provision in this case, this result is totally consistent with Utah public policy evidenced by the exception found in Utah's borrowing statute [35] concerning resident plaintiffs:

> When a cause of action has arisen in another state ... and by the laws thereof an action thereon cannot there be maintained against a person by reason of the lapse of time, an action thereon shall not be maintained against him in this state, *except in favor of one who has been a citizen of this state and who has held the cause of action from the time it accrued.* (Emphasis added.)

The borrowing statute, apart from the underscored exception, serves the purpose of preventing forum shoppers from flocking to Utah to take advantage of a longer limitation period, and thus precludes any adverse effect from the approach taken in this opinion.

The outcome further conforms with Utah's strong public policy regarding plaintiff's rights to bring a wrongful death action as stated in Article 16, Section 5 of the Utah Constitution:

> The right of action to recover damages for injuries resulting in death shall never be abrogated and the amount recoverable shall not be subject to any statutory limitation ...

Finally, the application of our statute of limitations does not have the discriminatory effect of laying "an uneven hand" on causes of action arising within and without our State.[36] Full faith and credit does not demand that our established public policies expressed above submit to the law of a foreign state.[37]

Similar results have been reached by other courts by applying their own tolling provisions or express and implied exemptions to their borrowing statutes, rather than applying the limitation periods placed on wrongful death actions by the foreign state in which the death occurred.[38]

■ As to the extent of recovery, the fact that plaintiff in her capacity as administratrix under Colorado law might be limited in her recovery to burial expenses does not serve to place any limitations on her recovery here. Our wrongful death act,[39] places no limitation on recovery, allowing for "such damages ... as under all the circumstances of the case may be just." Again, our statutory approach to the problem evidences a strong public policy against limitations being placed on damages. Since application of a foreign state's law limiting such damages would do violence to this policy, we are constrained to apply our own law concerning this matter.[40]

Our disposition of the issue concerning the effect of the Colorado judgment makes unnecessary an adoption of governmental interest analysis [41] as the choice-of-law approach for this jurisdiction as advocated by plaintiff. We therefore save that for another day.

---

**35.** Section 78–12–45.

**36.** *Wells v. Simonds Abrasive Co.*, supra, at 518, 73 S.Ct. at 858; see also, *First National Bank of Chicago v. United Air Lines*, 342 U.S. 396, 72 S.Ct. 421, 96 L.Ed. 441 (1952), rehearing denied, 343 U.S. 921, 72 S.Ct. 675, 96 L.Ed. 1334; *Hughes v. Fetter*, 341 U.S. 609, 71 S.Ct. 980, 95 L.Ed. 1212 (1951).

**37.** *Nevada v. Hall*, 440 U.S. 410, 99 S.Ct. 1182, 59 L.Ed.2d 416 (1979), rehearing denied, 441 U.S. 917, 99 S.Ct. 2018, 60 L.Ed.2d 389, *Hughes v. Fetter*, supra.

**38.** See, e. g., *Furman v. General Dynamics Corp.*, 337 F.Supp. 37 (S.D.N.Y.1974); *Coan v. Cessna Aircraft*, 53 Ill.2d 526, 293 N.E.2d 588 (Ill.1973); *Knight v. Moline E.M. & W. Ry. Co.*, 160 Iowa 160, 140 N.W. 839 (1913).

**39.** Section 78–11–7.

**40.** *Kilberg v. Northeast Airlines, Inc.*, 9 N.Y.2d 34, 211 N.Y.S.2d 133, 172 N.E.2d 526 (N.Y. 1961).

**41.** This approach is perhaps most clearly set out in a series of California Supreme Court decisions beginning with Justice Traynor's famous opinion in *Reich v. Purcell*, 67 Cal.2d 551, 63 Cal.Rptr. 31, 432 P.2d 727 (1967), and followed, among others, by *Hurtado v. Superior Court*, 144 Cal.Rptr. 106, 522 P.2d 666 (1974) and *Bernhard v. Harrah's Club*, 16 Cal.3d 313, 128 Cal.Rptr. 215, 546 P.2d 719 (1976).

In summary, we hold that jurisdiction in this case properly may be exercised by the Utah court, and the Colorado judgment does not bar litigation of this action in the Utah court. The judgment of the District Court is reversed and the matter remanded to that court for trial on the merits. Costs to plaintiff.

CROCKETT, C. J., and MAUGHAN and STEWART, JJ., concur.

HALL, Justice (dissenting):

I respectfully dissent.

I disagree with the majority of the Court in its treatment of the full faith and credit issue and the doctrine of res judicata which makes it operative.[1]

Res judicata precludes the assertion of an entire claim which was or should have been raised in a prior action.[2] It is generally accepted in this, as in other jurisdictions, that the doctrine is properly applicable (1) as between the parties to the prior litigation; (2) where the prior action proceeded to judgment on the merits; and (3) where the subsequent dispute arises out of the same cause of action forming the basis of the prior litigation.[3] In rendering its decision, the Colorado Court concluded that the parties and relief sought in that case were different from the previously decided federal case. Therefore, the federal decision was not res judicata as to the Colorado suit. However, the crucial question is whether the Colorado suit is res judicata as to the instant Utah suit.

Applying the foregoing analysis, it is my opinion that the Colorado decision is res judicata and therefore bars the present action. Clearly the parties are the same. Furthermore, there has been a judgment on the merits. The Colorado Court ruled that the statute of limitations in an action for wrongful death in Colorado is substantive, not procedural,[4] inasmuch as the limitation period is contained within the very act providing for recovery.[5] Therefore, the failure to commence an action within the statutory period resulted in a loss of the right and the dismissal of the action is on the merits. Finally, the present claim arises out of the same cause of action forming the basis of the prior litigation. In each instance, the theory of recovery was damages for the alleged wrongful death of plaintiff's decedent.

Utah has traditionally adhered to the mandate of the full faith and credit clause that final judgments in sister states are to be given conclusive effect.[6] Hence, we should abide by the Colorado decision which held that recovery for wrongful death was not warranted in the instant case. I would therefore affirm the trial court's decision.

Notwithstanding the foregoing, I deem it necessary to address two other points discussed by the majority.

My first concern is with the majority's treatment of Utah's borrowing statute.[7] I agree with the principle that if a person is a citizen of Utah he is entitled to the benefits of the statute.[8] However, such a determination is a factual matter to be decided by

---

1. 47 Am.Jur.2d, Judgments, § 1226.

2. See *Belliston v. Texaco, Inc.*, Utah, 521 P.2d 379 (1974); *Bordeaux v. Ingersoll Rand Company*, 71 Wash.2d 392, 429 P.2d 207 (1967).

3. *Wheadon v. Pearson*, 14 Utah 2d 45, 376 P.2d 946 (1962); *East Mill Creek Water Company v. Salt Lake City*, 108 Utah 315, 159 P.2d 863 (1945); *Mid-Continent Casualty Company v. Everett*, 340 F.2d 65 (10th Cir. 1965).

4. That Utah looks to the law of a sister state as to whether a matter is substantive procedure, see *Buhler v. Maddison*, 109 Utah 267, 176 P.2d 118 (1947).

5. For comparable holdings, see *Gaston v. B. F. Walker*, 400 F.2d 671 (5th Cir. 1968); *Bengston v. Nesheim*, 259 F.2d 566 (9th Cir. 1958); *California v. Copus*, 158 Tex. 196, 309 S.W.2d 227 (1958).

6. *In Re Estate of Duquesne*, 29 Utah 2d 94, 505 P.2d 779 (1973); *Intermountain Association of Credit Men v. Watterson*, 19 Utah 2d 212, 429 P.2d 818 (1967).

7. U.C.A., 1953, 78–12–45.

8. *Allen v. Greyhound Lines*, Utah, 583 P.2d 613 (1978).

the trial court.[9] Although plaintiff's living quarters were located in Utah, she apparently considered herself to be a resident of Colorado. Plaintiff voted in Colorado,[10] received mail in Colorado and conducted her business in Colorado. In my view, there exists a factual question as to where plaintiff resided, upon which the trial court should have an opportunity to rule.

Second, I disagree with the majority's resolution of the issue as to jurisdiction. In *Shaffer v. Heitner*,[11] the United States Supreme Court held that to satisfy the demands of due process, the same standard applies for quasi in rem jurisdiction as for in personam jurisdiction. Therefore, the standard we have adopted with respect to our long-arm statute must apply. "Minimum contacts" is basically a factual matter best left to the trial court's determination, especially when it has expressly deferred ruling upon the question of jurisdiction.[12]

At the very least, I would remand for a determination as to plaintiff's residency, and whether jurisdiction lies.

---

9. Id.

10. To vote in Colorado, a person must be a resident of Colorado. C.R.S., 1973, 1–2–101.

11. 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977).

12. Even plaintiff concedes that the jurisdictional questions should be remanded for further evidentiary hearing, inasmuch as she admits that the pleadings do not contain sufficient evidence to meet the *Shaffer* standard.